**KRAMER LEVIN NAFTALIS & FRANKEL LLP**          Hearing Date: May 25, 2022
Adam C. Rogoff, Esq.
P. Bradley O'Neill, Esq.
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000
*Co-Counsel for Benefit Street Partners Realty*
*Operating Partnership, L.P.*

**NELSON MULLINS RILEY & SCARBOROUGH, LLP**
Lee B. Hart, Esq.
201 17th Street, Suite 1700
Atlanta, Georgia 30363
Telephone: (404) 322-6000
Facsimile: (404) 322-6050

Gary M. Freedman, Esq.
2 South Biscayne Blvd., 21st Floor
Miami, Florida 33131
Telephone: (305) 373-9400
Facsimile: (305) 373-9443
*Co-Counsel for Benefit Street Partners*
*Realty Operating Partnership, L.P.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>96 Wythe Acquisition, LLC<br><br>　　　　　　　　　　Debtor. | Chapter 11<br>Case No. 21-22108-RDD |
| 96 Wythe Acquisition, LLC<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>Benefit Street Partners Realty Operating<br>Partnership, L.P.,<br><br>　　　　　　　　　Defendant. | Adversary Proceeding No. 22-07002-RDD<br><br>**REPLY IN SUPPORT OF PARTIAL**<br>**MOTION TO DISMISS** |

Benefit Street Partners Realty Operating Partnership, L.P. ("Benefit Street", or "Lender"),
secured creditor of 96 Wythe Acquisition, LLC, the above-referenced Debtor and Plaintiff (the
"Debtor", or "Plaintiff"), by and through counsel, files this reply (the "Reply") in support of its
Motion to Dismiss (the "Motion")[1] filed on February 7, 2022 (Docket No. 4), seeking the dismissal
of the majority of the Debtor's complaint (the "Complaint"). On March 18, 2022 the Debtor filed
its *Response to Partial Motion to Dismiss* (the "Response") (Docket No. 12) in opposition to the
Motion. Benefit Street hereby replies to the Response. The Motion should be granted.

## I.    Introduction

On January 6, 2022, Debtor filed its Complaint initiating the above-captioned adversary
proceeding ("Adversary Proceeding") (Docket No. 1). On February 7, 2022, Benefit Street filed
its Motion seeking to dismiss portions of the Complaint for failure to state a claim, which was
supported by, among other things, Benefit Street's Memorandum of Law in support thereof
(Docket No. 5) (the "Memorandum") and Appendix of Exhibits (Docket No. 7) (the "Appendix").

The vast majority of the Complaint fails to state a claim for a number of reasons.[2] Among
other things, it is precluded by the Appellate Decision under the *res judicata*, collateral estoppel
and *Rooker-Feldman* doctrines. *See* Memorandum, pp. 10-22. In addition, the various claims
asserted in the Complaint were contractually waived by the Debtor (that waiver being reaffirmed
by a ruling rendered by the First Department). *Id.*, pp. 22-24. Moreover, litigation, generally,
against the Debtor cannot form the basis of a valid claim back against Benefit Street. Id., pp. 24-
25. And, Counts 2, 3 and 4 of the Complaint (quasi-contractual claims asserting breach of implied

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

[2] The Motion does not seek to dismiss the Mathematical Computation and Post-Petition Allegations, which are subject
to a soon-to-be filed motion for summary judgment dispensing with these issues.

covenant of good faith and fair dealing, unjust enrichment and conversion) are subsumed within and duplicative of Count 1, alleging breach of contract (a ruling rendered by Justice Ostrager with respect to the breach of covenant of good faith and fair dealing claim).

In opposing the Motion, the Debtor's Response employs four overarching themes that it applies more or less equally to all of Benefit Street's positions: (1) the scope of the Appellate Decision is not broad enough to constitute a judgment on the merits of the Complaint; (2) Benefit Street is judicially estopped from arguing adjudication on the merits because of its waiver argument; (3) the Debtor's contractual waivers in the loan documents only apply to defensive claims; and (4) the Complaint asserts bankruptcy-specific actions that cannot be precluded by a state court judgment.

All Debtor's themes fail. As a preliminary matter, the position that the causes of action briefed and litigated exhaustively by both parties in the Foreclosure Action and Appeal were not litigated on the merits is ridiculous. Far from ignoring the merits, Justice Ostrager's Summary Judgment Order first found, on the merits, that certain of the Foreclosure Counterclaims precluded summary judgment on foreclosure, *see* Summary Judgment Order at pg. 4, which the First Department subsequently reversed by granting summary judgment on foreclosure and finding the Foreclosure Counterclaims "not viable," *See* Appellate Decision at pg. 2. The Debtor's arguments to the contrary are belied by the scope of the notice of appeal (which prescribed the issues before the First Department), the plain language of the Appellate Decision, and the case law interpreting the Rule 5013 of the C.P.L.R., upon which it relies.

It is also contradicted by the commonsense notion that summary judgment motions (which is what Benefit Street filed giving rise to the Appellate Decision) are motions filed upon matters outside pleadings leading to decisions on merits that preclude subsequent collateral attack. To rule

in favor of the Debtor would apparently render every summary judgment prior to trial subject to collateral attack simply for omitting the phrase "with prejudice," even where the order was rendered upon evidence, briefing and argument.  This is not, and has never been, the rule.

Moreover, the Debtor's assertion that the Appellate Decision does not adjudicate the Foreclosure Counterclaims on the merits because Benefit Street also argued that they were waived ignores two legal and factual realities: (1) parties may advance alternative legal theories in New York; and (2) Benefit Street did in fact argue the Foreclosure Counterclaims were deficient on their merits and, alternatively, that they were waived.  Justice Ostrager considered and ruled on both arguments, as did the First Department, which found that the Foreclosure Counterclaims were *both* waived *and* "not viable" in context of the exhaustive briefing giving rise to the Appellate Decision that paved the way to foreclosure.  The law is that Benefit Street may advance alternative legal theories, as it has in this case, without effecting an estoppel of one upon the other.

Further, the Debtor's argument that the parties' contractual waivers do not apply to the Foreclosure Counterclaims because the Debtor's Chapter 11 Case (filed to stave off Benefit Street's foreclosure following the Appellate Decision) and this Adversary Proceeding (filed to reduce Benefit Street's asserted claim) are not defensive in nature requires the Court to disassociate these proceedings from their history and context.  If Benefit Street had not filed the Foreclosure Action, the Debtor would not have filed this case.  If the First Department had not rendered the Appellate Decision, the Debtor would not have filed this case.  If Benefit Street had not filed its proof of claim, the Debtor would not have filed this adversary proceeding. This entire proceeding is defensive to Benefit Street's rights under its Loan Documents, which specifically provide for the waiver of the claims the Debtor seeks to assert against Benefit Street, defensively, in the Complaint.

Finally, the Debtor's argument, that in this case, it can re-sue Benefit Street upon the same facts and circumstances disputed in the Appellate Decision because it seeks to relitigate them under bankruptcy-specific causes of action fails. The Appellate Decision disposed of the Foreclosure Counterclaims – which arise under state law. The caselaw is unambiguous that a party cannot recast failed state court claims as "bankruptcy causes of action" to have a second bite at the apple.

The Court should grant Benefit Street's Motion. To hold otherwise would be to invite every litigant on the losing end of a summary judgment motion (no matter how thoroughly briefed and argued) to bring their grievances to a bankruptcy court for a second chance. Such a ruling would beget a poor policy, contrary to the interests of justice and finality, which would improperly distort the bankruptcy courts into appellate courts over state court judgments providing for a resolution on the merits and improperly subsume within bankruptcy court jurisdiction state law issues already adjudicated by state courts.

## II.    Reply in Support

### A.    The Appellate Decision fully adjudicated the Foreclosure Counterclaims on the merits.

When the First Department issued the Appellate Decision, it had rendered a full and final judgment on the Foreclosure Action as well as the Foreclosure Counterclaims. That notwithstanding, the Debtor now argues: (1) the Foreclosure Counterclaims were outside the scope of the Appeal, and (2) the dismissal of the Foreclosure Counterclaims was without prejudice. The Debtor is wrong on each point as a matter of law.

1.  **The Appellate Decision by its terms adjudicates the full scope of the appeal, which includes the Lender's *prima facie* foreclosure claims <u>and</u> the Debtor's Foreclosure Counterclaims.**

The Debtor hopes to avoid well-worn preclusion doctrines by arguing that the claims re-alleged in the Complaint, which mirror the Foreclosure Counterclaims, are beyond the scope of the Appellate Decision. That is not true. The Notice of Appeal filed by Benefit Street commencing the Appeal states the following with respect to the Appeal's scope:

> This appeal is taken from each and every portion of the Summary Judgment Order adverse to Plaintiff.

A true and correct copy of the Notice of Appeal filed with the New York County Clerk is attached hereto as Exhibit "A".

The scope of the Appeal necessarily included the rulings in the Summary Judgment Order that the Foreclosure Counterclaims, which are practically identical to the Complaint, presented a sufficient fact issue to defeat summary judgment. Benefit Street appealed this decision, and in disposing of the Appeal, the First Department essentially rendered four conclusions: (1) Benefit Street established its *prima facie* entitlement to summary judgment, (2) the Debtor failed to rebut this evidence and waived the Foreclosure Counterclaims, (3) the record does not support the Debtor's contention that the contractual waiver of defenses was rendered ineffective by Benefit Street's conduct, and (4) the Foreclosure Counterclaims "were not viable." *See* Appellate Decision, Appendix, Ex. 5.

Nowhere in the Appellate Decision does the First Department abstain from adjudicating any element of the Appeal, which necessarily includes the merits of the Foreclosure Counterclaims as stated in the Notice of Appeal. The First Department in fact affirmatively ruled on the merits of the Foreclosure Counterclaims, noting that they "were not viable," were not sufficiently

6

supported to defeat the contractual waiver of defenses, and did not stand in the way of Benefit Street's entitlement to summary judgment on its foreclosure claim. *See* Appellate Decision.

To that end, the First Department's adjudication of Benefit Street's entitlement to foreclose is dispositive of the merits of the Foreclosure Counterclaims. The First Department held that Benefit Street proved its *prima facie* case that the Loan defaulted and that Benefit Street was entitled to foreclose, *which the Debtor failed to rebut*. The Foreclosure Counterclaims were founded upon (factually incorrect) assertions that Benefit Street defaulted first or manufactured the Debtor's defaults. Any issue of fact regarding any of the Foreclosure Counterclaims would have negated Benefit Street's entitlement to foreclose, thereby precluding summary judgment. The First Department's finding of Benefit Street's entitlement to foreclose therefore necessarily adjudicated the validity – or lack thereof – of the Foreclosure Counterclaims on the merits.

Indeed, as argued by the Debtor in its Response, Justice Ostrager ruled in the Summary Judgment Order that Benefit Street could not foreclose if the Foreclosure Counterclaims were meritorious. The order states that, "the counterclaim is inextricably intertwined with the Lender's claims such that the claim and counterclaim should be heard together...." *See* Response at ¶ 31. As acknowledged by the Debtor itself in its response, Justice Ostrager denied summary judgment to Benefit Street on that basis. It therefore follows that the First Department's reversal in ordering Benefit Street's entitlement to foreclose found the Foreclosure Counterclaims invalid.

This ruling is corroborated by the First Department's language in the Appellate Decision, which clearly held that the Foreclosure Counterclaims "were not viable" as an alternative holding. It is also consistent with the law.

7

The Debtor argues in its Response that the "only consequence of finding [the Foreclosure Counterclaims] 'not viable' was to dismiss them without prejudice meaning that, as a matter of law, those causes of action could be raised anew in a separate action, just as the Debtor did throughout the Complaint." *See* Response, ¶ 39. However, under New York law, the Debtor gets this wrong. In New York, "a party is not free to remain silent in an action in which he is the defendant and then bring a second action seeking relief inconsistent with the judgment in the first action by asserting what is simply a new legal theory." *Henry Modell & Co. v. Minister, Elders & Deacons of Reformed Protestant Dutch Church of City of New York*, 502 N.E.2d 978, 980 (N.Y. 1986); *see also Harris v. BNC Mortg., Inc.*, 737 F. App'x 573, 575 (2d Cir. 2018). Moreover, in New York, all counterclaims are permissive. *See Urbanski v. Urbanski*, 107 Misc. 2d 215, 433 N.Y.S. 718, 719 (N.Y. Sup. Ct. 1980). A party cannot abstain from bringing a claim in an action only to utilize those claims to collaterally attack the outcome of that action later.

That is exactly what the Debtor seeks to have this Court effectuate: a determination that the Debtor did not advance the Foreclosure Counterclaims on the merits during the Foreclosure Litigation and Appeal (which it obviously did), lose, and then reassert the same claims before this Court to reduce Benefit Street's claim in this case. The Foreclosure Counterclaims, which, if Justice Ostrager had been affirmed, could have barred Benefit Street's legal entitlement to enforce its remedies under the Loan Documents, cannot be re-litigated before this Court. They have already been resolved on the merits in the state courts by the Appellate Decision.

Far from being "well beyond the issues actually presented" and an "extreme and unsupported reading" of the Appellate Decision, *see* Response at ¶ 33, the Appellate Decision adjudicated the entire universe of claims and issues presented to it in the Notice of Appeal,

8

including the Foreclosure Counterclaims, holding both that they had been waived and also that they were "not viable" on the merits.

### 2.    The Court may not rehear the vast majority of the Complaint pursuant to the *Rooker-Feldman* doctrine.

The Court may not rehear the vast majority of the Complaint pursuant to the *Rooker-Feldman* doctrine, which precludes federal courts from hearing claims which are, "in substance, appeals from state-court judgments." *Hoblock v. Albany County Bd. Of Elections*, 422 F.3d 77, 84 (2d Cir. 2005). *Rooker-Feldman* is a pragmatic doctrine, focused on avoiding federal trial courts functionally sitting in review over a state court proceeding. It is also jurisdictional, recognizing that "district courts cannot act as appellate courts for state courts; Congress has reserved appellate jurisdiction over state court judgments exclusively to the Supreme Court." *In re Residential Capital, LLC*, 2014 WL 5473037 at *6 (Bankr. S.D.N.Y. 2014) (internal quotations omitted).

In its Response, the Debtor clarifies that it does not seek this Court reverse or undo the Appellate Decision. Response at ¶ 69. Instead, the Debtor tries to thread the needle by arguing that, presumably through the claims objection and equitable subordination counts in the Complaint, the Debtor requests the Court find that Benefit Street's actions merit a reduction of its claim on the equities. But this is a non-sensical argument and belied by the Debtor's own state court litigation, because the Debtor *already asserted*, among others, counts and defenses in equity breach of duty of good faith and fair dealing (Foreclosure Answer, Counterclaim II), unclean hands (Foreclosure Answer, Eighth Affirmative Defense), covenant of good faith and fair dealing (Foreclosure Answer, Twelfth Affirmative Defense), and setoff and recoupment (Foreclosure Answer, Fifteenth Affirmative Defense), *and lost*. To find now that the equities weigh in favor of reducing or subordinating Benefit Street's claim on the same theories when they were insufficient

9

to carry any of the foregoing claims would effectively overrule the Appellate Decision, which this Court lacks the jurisdiction to do.

### 3.    N.Y. C.P.L.R. 5013 does not provide that the Foreclosure Counterclaims were dismissed without prejudice.

The Debtor's reliance on CPLR § 5013 is fundamentally misplaced, since that section is inapplicable to this matter.  CPLR § 5013 states that:

> [a] judgment dismissing a cause of action before the close of the proponent's evidence is not a dismissal on the merits unless it specifies otherwise, but a judgment dismissing a cause of action after the close of the proponent's evidence is a dismissal on the merits unless it specifies otherwise."

As set forth by the Practice Commentaries to Section § 5013 and as implied by the words "after…close of proponent's evidence," "CPLR 5013 has the narrow mission of determining the *res judicata* effect of a judgment of dismissal made at the trial."  David D. Siegel, Practice Commentaries to CPLR § 5013.  Indeed, "the res judicata doctrine and its family members are almost entirely the progeny of case law.  Statutes and rules play only a small role on the scene. CPLR 5013 is one of those players." *Id.*  Accordingly, CPLR § 5013 is inapplicable because the Appellate Decision and the underlying Summary Judgment Order were rendered pursuant to a summary judgment motion under CPLR § 3212 and did not concern a dismissal of the Foreclosure Counterclaims at trial.

However, assuming, *arguendo*, that this court were to apply CPLR § 5013 to the present summary judgment context, Debtor's claims would still be precluded.  The Court of Appeals has held that in order for § 5013 to have preclusive effect under *res judicata*, it is only required that it *appears* from the judgment that it was on the merits and it is not necessary that the judgment actually say those precise words. *Strange v. Montefiore Hosp. & Med. Ctr.*, 59 N.Y.2d 737 (1983) ("CPLR 5013 does not require that the prior judgment contain the precise words 'on the merits' in

order to be given res judicata effect; it suffices that it appears from the judgment that the dismissal was on the merits. Indeed, one would not expect to find any such explicit recital in a judgment of dismissal based on a grant of summary judgment for insufficiency of proof.").

Not only does the Appellate Decision make clear that the appealed portions of the Summary Judgment Order were "unanimously reversed, on the law," *see* Appellate Decision, but it is axiomatic that a motion granting summary judgment is, by its very nature, "on the merits." *Eidelberg v. Zellermayer*, 5 A.D.2d 658 (App. Div. 1st Dept. 1958) ("A motion granting summary judgment is on the merits.") (internal citations omitted). Certainly, Justice Ostrager believed the Appellate Decision to be on the merits and fully dispositive of the issue based on his statements from the bench on February 18, 2021, two days after the Appellate Decision was entered. ("You're all aware that the Appellate Division rendered a decision in the last couple of days which essentially granted the plaintiff's motion for summary judgment on the foreclosure aspect of the case. And therefore, the next thing that we should be doing would be preparing to implement the Appellate Division's decision allowing the plaintiff to foreclose on its mortgage.") *See* Memorandum, p. 7.

Moreover, while the plain language of CPLR § 5013 does not require that a judgment contain the words "with prejudice" as Debtor argues (without citation), it is nevertheless well-established that "courts have used the words 'with prejudice' interchangeably with the phrase 'on the merits' to indicate the same preclusive effect." *Yonkers Contr. Co. v. Port Auth. Trans-Hudson Corp.*, 93 N.Y.2d 375 (1999). Here, since a decision based on summary judgment is necessarily "on the merits," Debtor's CPLR 5013 argument is meritless.

**B.**    **Benefit Street is not judicially estopped from arguing the Foreclosure Counterclaims were adjudicated on the merits.**

In an effort to side-step the reality that the Foreclosure Counterclaims were disposed of on the merits by the Appellate Decision, the Debtor asserts that Benefit Street is judicially estopped from arguing that the claims contained in the Complaint are precluded. *See* Response, ¶ 43.  Citing to no authority, the apparent rationale goes that, because Benefit Street argued in the Foreclosure Action and on Appeal that the Debtor waived the Foreclosure Counterclaims, Benefit Street is somehow estopped from arguing that such claims were also defective on the merits.

Not only is there nothing inconsistent about these two arguments, the parties' briefs in the Foreclosure Action and Appeal shows that the Debtor is clearly wrong.  While Benefit Street did argue waiver, it also alternatively argued the underlying merits of the Foreclosure Counterclaims at length, eliciting a ruling from Justice Ostrager, which was then reversed by the First Department on the merits.

"[J]udicial estoppel applies to inconsistent factual positions, not alternative legal theories of the case." *DeFlora Lake Dev. Assoc. v Hyde Park (In re DeFlora Lake Dev. Assoc.)*, 571 BR 587, 599 (Bankr SDNY 2017) (Drain, J.).  The Debtor cites to *In re Adelphia Recovery Tr.*, 634 F.3d 678 (2d Cir. 2011) to argue that the Debtor is judicially estopped.  However, *Adelphia* does not stand for the proposition that a party cannot advance alternative legal theories.  Instead, the Second Circuit was focused on the integrity of the judicial proceedings, stating that:

> [t]he purpose of judicial estoppel is not to look for, or punish, outright lies, but to 'protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment.'  In our view a party puts the integrity of the judicial process at risk not only when it knowingly lies but when it takes a position in the short term knowing that it may be on the verge of taking an inconsistent future action.

*Adelphia*, 634 F.3d at 696.

12

The concern addressed in *Adelphia* – misrepresentation to the Court followed by a change of position due to expedience – is wholly different from this case. Here, it is wholly consistent for Benefit Street to argue that the Debtor waived its claims against Benefit Street and simultaneously that the claims lack merit. In fact, this very same line of thought was articulated by the First Department in the Appellate Decision when it dismissed the Counterclaims as waived and because they were "not viable." The parties made both arguments to the First Department, and the First Department ruled on both. Judicial estoppel does not protect the Complaint from dismissal.

**C.    The Debtor contractually waived its claims against Benefit Street.**

The claims raised in the Complaint were waived by the Loan Agreement in sections 2.6(e)(iii) & 14.9, and Section 10.4 of the Mortgage. This precise issue was litigated and decided on the merits by the First Department in the Appellate Decision so is therefore precluded by the doctrines of *res judicata* and collateral estoppel and should not be revisited by this Court under the *Rooker-Feldman* doctrine. However, even if the claims alleged in this Complaint were not precluded, they would be waived *de novo* by the parties' agreements.

Section 2.6(e)(iii) waives the Debtor's right to assert any claim against Benefit Street as a defense to any of the Debtor's payment obligations under the Loan Agreement. Sections 14.9 of the Loan Agreement and 10.4 of the Mortgage waive the Debtor's right to assert a counterclaim, other than a mandatory or permissive counterclaim, related to any Loan Document in any action brought against the Debtor by Benefit Street. The contractual provisions described above waive the Foreclosure Counterclaims, as determined by the First Department in the Appellate Decision, and they also waive the Complaint's re-alleged claims in this Adversary Proceeding.

13

The Debtor tries to evade these contractual waivers by arguing that the Debtor's claims survive because they were asserted "offensively" in context of this Adversary Proceeding. *See* Response at ¶ 22. However, the Debtor is wrong.

The Adversary Proceeding is, at its core, nothing more than an extension of the Foreclosure Action and the claims raised therein. Absent Benefit Street's filing of any of the Foreclosure Action, the Appeal or its proof of claim in the Debtor's Chapter 11 case, the Debtor never would have filed the Complaint. The Complaint, which mirrors the Debtor's Foreclosure Counterclaims, is strictly a defensive action to oppose the amounts claimed by Benefit Street against the Debtor in its Bankruptcy Case that re-pleads the same defenses and counterclaims waived by the Loan Documents.

Moreover, if the Debtor is correct, the outcome would be that otherwise identical causes of action, which are based on the same underlying facts between the same parties and in many cases alleged upon identical language, could be viewed as entirely separate claims when pled "defensively" as opposed to "offensively." Adopting the Debtor's legal theory would mean that the Debtor would be required to be sued by Benefit Street, abstain from asserting counterclaims or defenses, have its property foreclosed upon, and then sue Benefit Street after the fact upon the same related facts. This result would fly in the face of New York law that precludes a party from asserting counterclaims and defenses it failed to assert in a prior action where such counterclaims and defenses could undermine the result of the prior action. *See Henry Modell & Co. v. Minister, Elders & Deacons of Reformed Protestant Dutch Church of City of New York*, 502 N.E.2d at 980.

The only correct reading of Sections 14.9 of the Loan Agreement and 10.4 of the Mortgage is that the Debtor's claims asserted in the Complaint, which are clearly defensive to Benefit Street's rights and claim regardless of the specific posture, are waived. Moreover, this

entire argument advanced by the Debtor – that counterclaims and defenses are only waived in a defensive setting – completely ignores the fact that Section 2.6(e)(iii) of the Loan Agreement makes absolutely no distinction between offensive and defensive claims in requiring the Debtor to simply pay and perform regardless of "setoff claim or counterclaim and shall be made irrespective of any defense thereto." *See* Memorandum, p. 13.

The Claims asserted by the Debtor in the Complaint are clearly waived by the parties' agreement. The Debtor's procedural arguments to the contrary should fail.

**D.    The Debtor cannot recast failed state law claims as bankruptcy causes of action.**

The Debtor further argues that the Complaint should survive because it recast its failed state law claims as bankruptcy causes of action, such as its claim objection and equitable subordination, which provides it another chance to prove its claims. However, the Debtor is wrong. In its Response, the Debtor argues the relief sought by the Complaint cannot be precluded because bankruptcy remedies are distinct from the actions litigated in the Foreclosure Action and Appeal. *See* Response at ¶¶ 45-46.

As a preliminary matter, the Bankruptcy Code does not circumvent the established preclusion doctrines or the *Rooker-Feldman* doctrine. The Debtor's argument appears to be that because the Bankruptcy Code offers debtors the ability to attack the validity of, and equitably subordinate, claims, those prayers for relief are immune from preclusion by a prior judgment on the merits. This argument is incorrect.

The relief requested by the Complaint that seeks to equitably subordinate or reduce Benefit Street's clams is founded upon the same facts as the Foreclosure Counterclaims. Because the Debtor could not have equitably subordinated or disallowed Benefit Street's claim outside

15

bankruptcy does not mean that the Debtor is free to relitigate the very same matters in this Court after they were found meritless by in the Appellate Decision. *In re Assante*, 470 B.R. 707 (Bankr. S.D.N.Y. 2012); *In re 9281 Shore Rd. Owners Corp.*, 214 B.R. 676 (Bankr. E.D.N.Y. 1997). And, further, while perhaps Benefit Street's allowed claim in the Debtor's Chapter 11 Case may not have been subject to prepetition disallowance in a state court as a technical matter of Section 502 of the Bankruptcy Code, certainly the state courts held jurisdiction to liquidate the Debtor's monetary obligations to Benefit Street, which is in practice the same thing.

The Response attempts to distinguish *Assante* and *9281 Shore Rd. Owners Corp.*, which are cited in Benefit Street's Memorandum, by arguing that, in both, the underlying pre-bankruptcy action had, "been expressly decided by the state court." *See* Response at ⁋ 62. The Debtor goes on to quote the *lower court's reversed decision* for its statement that a judicable question of fact remained regarding the Foreclosure Counterclaims. *Id.* at ¶ 63. However, the Debtor's proposed distinction fails because, here, the First Department entered the Appellate Decision, which decided, on the merits, that the Foreclosure Counterclaims were not viable and that Benefit Street was entitled to foreclose. As such, the merits were "expressly decided" by the New York courts.

In *Assante* and *9281 Shore Rd.*, the state courts entered orders dismissing the pre-petition debtor's affirmative defenses and counterclaims. Upon such dismissals, the bankruptcy courts found that, "where the same allegations of misconduct were raised as affirmative defenses and decided against a debtor, the same factual allegations cannot be used in a subsequent proceeding in Bankruptcy Court to subordinate the creditor's claims or otherwise attack the validity of the creditor's lien." *In re Assante*, 470 B.R. at 712 (*quoting In re 9281 Shore Rd. Owners Corp.*, 214 B.R. 676 (Bankr. E.D.N.Y. 1997)). In other words, where a previously adjudicated claim is re-

16

alleged in bankruptcy upon the same claimed underlying misconduct, it is precluded, even where it is restated as a "bankruptcy cause of action" such as equitable subordination.

In further attempt to confuse the issue, the Debtor asserts that bankruptcy courts can hear re-litigated matters if the analysis under bankruptcy law could not have occurred in the initial state court proceeding. Response at ¶ 49. However, the string-cited cases the Debtor relies upon to support this proposition are all readily distinguishable. *In re Southland Corp.*, 160 F.3d 1054, 1059-60 (5th Cir. 1998) (deciding that an over-secured creditor was entitled to file a proof of claim charging post-petition default interest, despite the possibility that the claim could have had that post-petition default interest disallowed if it had produced an inequitable result); *Key Bank Nat'l Assoc. v. Milham (In re Milham)*, 141 F.3d 420, 423 (2d Cir. 1998) (deciding, in a Chapter 13 case, that an over-secured creditor was not entitled to default interest post-plan confirmation pursuant to Section 1325); *Urban Communicators PCS Ltd. P'ship v. Gabriel Capital, L.P.*, 394 B.R. 325, 338 (S.D.N.Y. 2008) (reversing the bankruptcy court in its reduction of an over-secured creditor's post-petition default interest on equitable grounds); *In re General Growth Props., Inc.*, 451 B.R. 323, 326 (Bankr. S.D.N.Y. 2011) (deciding that a likely over-secured creditor was entitled to post-petition default interest); *In re Liberty Warehouse Assocs. Ltd. P'ship*, 220 B.R. 546, 550 (Bankr. S.D.N.Y. 1998) (deciding that an over-secured creditor could charge default pendency interest post-petition); *In re Vest Assocs.*, 217 B.R. 696, 702 (Bankr. S.D.N.Y. 1998) (deciding that an over-secured creditor was not entitled to default post-petition interest on equitable considerations).

Each of the foregoing decisions deals with allowance of post-petition default interest in context of Section 506(b) (or post-confirmation of a Chapter 13 plan, rendering that particularly citation particularly tenuous). Relying upon these cases, the Debtor incorrectly suggests that the above cases somehow permit the Court to unwind pre-petition interest and fees charged pursuant

17

to the Loan Agreement, which were subject to the Foreclosure Action and Appeal.  Indeed, the

suggestion that this Court can unwind pre-petition interest and fees following the Appellate

Decision, which established Benefit Street's entitlement to foreclose and the meritless nature of

the Foreclosure Counterclaims, is contrary to the very law string-cited in the Response.

Moreover, none of the cases cited by the Debtor involve a prior decision adjudicating the

merits of the claims.  Here, the First Department ruled that the very same claims upon which the

Debtor relies to establish its purported equities are meritless.  The Debtor is therefore precluded

by a binding state court decision from relitigating those points, which is yet another distinguishing

factor from the case law the Debtor cites.

Further, the Debtor cannot weaponize the Court's equitable powers to stage a collateral

attack on the Foreclosure Action.  The Debtor asks that the Court use the bankruptcy process to:

(1) reduce the amount of interest claimed by Benefit Street "as a matter of state law" (Response at

¶ 54); and (2) permit the Complaint to avoid an inequitable "windfall" accrual of interest for

Benefit Street (Response at ¶ 56).

It is "hornbook law that § 105(a) does not allow the bankruptcy court to override explicit

mandates of other sections of the Bankruptcy Code."  *Law v. Siegel*, 571 U.S. 415, 421 (2014)

(internal quotations omitted).  For the Court to exercise its Section 105(a) equitable powers it must

be for the purpose of effectuating another provision of the Bankruptcy Code.  *Id.*  Despite this, the

Debtor cites to no Bankruptcy Code provision that it seeks to have the Court effectuate with the

exercise of its equitable powers.  As a mere "carry out" provision of the Bankruptcy Code, Section

105(a), and through it the Court's equitable powers, are inappropriate to manufacture relief to

which a debtor would not otherwise have an entitlement. *Law v. Siegel*, 571 U.S. at 421 ("whatever

18

equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code").

The Debtor cites to no provision of the Code which permits it to relitigate the Foreclosure Action, nor any provision which entitles the Debtor to ignore well established doctrines of preclusion. Instead, to support its claim, the Debtor cites to *In re 785 Partners LLC*, 470 B.R. 126, 133 (Bankr. S.D.N.Y. 2012). In reality, *785 Partners* is directly contrary to the Debtor's notion that the Court can modify the interest included in a secured creditor's claim. There, the Court held that, "[e]ven where the default rate strikes the judge as high, a court cannot rewrite the parties' bargain based on its own notions of fairness and equity." *In re 785 Partners LLC*, 470 B.R. at 132.

Accurately described, *785 Partners* concerns only the *post-petition* interest that an over-secured creditor can charge under Section 506(b). *Id.* The Debtor cites to absolutely no supporting authority for the proposition that this Court can use its equitable powers to reduce the pre-petition interest or fees charged by the Lender and merged into the Appellate Decision. The Debtor further cites no authority that, as here, the equities already established by a binding prepetition decision rendered on the merits by a state court can be considered to reduce or disallow post-petition interest. The Debtor should not be permitted to hijack the Court's Section 105(a) equitable powers to backdoor its way into relitigating matters which were clearly resolved in the State Court Litigation.

### III.   CONCLUSION

As established by the Motion and this Reply, significant portions of the Complaint are simply an attempt to relitigate the various counterclaims and affirmative defenses that the Debtor

previously asserted—and lost—in the State Court Litigation.  The Court should not permit the Debtor to circuitously attack the decisions rendered in the State Court Litigation under the guise of seeking bankruptcy relief.  Additionally, independent grounds exist to dismiss the counts stated in the Complaint, including waiver and failure of the claims as a matter of law.  Benefit Street respectfully requests that the Motion be granted, such that, except for the Mathematical Computation and Post-Petition Allegations, which will be resolved promptly on summary judgment, the Court dismisses the Complaint with prejudice for failure to state a claim.

Respectfully submitted, this 11th day of May, 2022.

NELSON MULLINS RILEY &
SCARBOROUGH, LLP

_____*/s/ Lee B. Hart*_____

Lee B. Hart
201 17th Street, Suite 1700
Atlanta, Georgia 30363
Telephone: (404) 322-6000
Facsimile: (404) 322-6050
Lee.Hart@nelsonmullins.com

Gary M. Freedman
2 South Biscayne Blvd., 21st Floor
Miami, Florida 33131
Telephone: (305) 373-9400
Facsimile: (305) 373-9443
Gary.Freedman@nelsonmullins.com

KRAMER LEVIN NAFTALIS &
FRANKEL LLP
Adam C. Rogoff, Esq.
P. Bradley O'Neill, Esq.
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000

*Co-Counsel for Benefit Street Partners
Realty Operating Partnership, L.P.*

Exhibit "A"

Notice of Appeal

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: COMMERCIAL DIVISION

BENEFIT STREET PARTNERS OPERATING
PARTNERSHIP, L.P.,

                        Plaintiff,

            - against -

96 WYTHE ACQUISITION LLC, TOBY
MOSKOVITS, YECHIEL MICHAEL
LICHTENSTEIN, RENT A UNIT NY INC.,
ADVANCED PLUMBING MECHANICAL &
SPRINKLERS CORP., MA2 FLAGS
CONTRACTING CORP., ROCK GROUP NY
CORP., CRIMINAL COURT OF THE CITY OF
NEW YORK, NEW YORK STATE DEPARTMENT
OF TAXATION AND FINANCE, and
ENVIRONMENTAL CONTROL BOARD OF THE
CITY OF NEW YORK,

                        Defendants.

Index No. 653396/2019

Assigned Justice:
Hon. Barry R. Ostrager

Motion Sequence No. 3

**NOTICE OF APPEAL**

**PLEASE TAKE NOTICE** that Plaintiff hereby appeals to the Appellate Division of the

Supreme Court of the State of New York, First Department, from a Decision and Order of the

Supreme Court of the State of New York, County of New York, Part 61 (Hon. Barry R.

Ostrager), dated April 9, 2020 (the "Order"), and as to which Notice of Entry was served on

August 24, 2020. A true and correct copy of the Order, together with Notice of Entry, is annexed.

This appeal is taken from each and every portion of the Order adverse to Plaintiff.

Dated: New York, New York
       August 24, 2020

                     SCHWARTZ SLADKUS REICH
                        GREENBERG ATLAS LLP
                     *Attorneys for Plaintiff*

                     By: **/s/ Ethan A. Kobre**
                         Ethan A. Kobre
                     444 Madison Avenue
                     New York, New York 10022

To:    Counsel of Record (*by NYSCEF*)

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: COMMERCIAL DIVISION

BENEFIT STREET PARTNERS OPERATING
PARTNERSHIP, L.P.,

                            Plaintiff,

              - against -

96 WYTHE ACQUISITION LLC, TOBY
MOSKOVITS, YECHIEL MICHAEL
LICHTENSTEIN, RENT A UNIT NY INC.,
ADVANCED PLUMBING MECHANICAL &
SPRINKLERS CORP., MA2 FLAGS
CONTRACTING CORP., ROCK GROUP NY
CORP., CRIMINAL COURT OF THE CITY OF
NEW YORK, NEW YORK STATE DEPARTMENT
OF TAXATION AND FINANCE, and
ENVIRONMENTAL CONTROL BOARD OF THE
CITY OF NEW YORK,

                         Defendants.

Index No. 653396/2019

Assigned Justice:
Hon. Barry R. Ostrager

Motion Sequence No. 3

**NOTICE OF ENTRY**

       **PLEASE TAKE NOTICE** that the within is a true copy of a Decision and Order of the

Hon. Barry R. Ostrager, dated April 9, 2020, and duly entered by the Clerk of said Court on

April 9, 2020.

Dated: New York, New York
       August 24, 2020

                     SCHWARTZ SLADKUS REICH
                     GREENBERG ATLAS LLP
                     *Attorneys for Plaintiff*

                     By: **/s/Ethan A. Kobre**
                        Ethan A. Kobre
                     444 Madison Avenue
                     New York, New York 10022
                     (212) 743-7000

To:   Counsel of Record (*by NYSCEF*)

# SUPREME COURT OF THE STATE OF NEW YORK NEW YORK COUNTY

PRESENT:     **HON. BARRY R. OSTRAGER**          PART          IAS MOTION 61EFM

*Justice*

------------------------------------------------------------------X

BSPRT 2018-FL3 ISSUER, LTD.,

|                                  |            |
|----------------------------------|------------|
| Plaintiff,                       | INDEX NO.  653396/2019 |
| - v -                            | MOTION DATE |
| 96 WYTHE ACQUISITION LLC, TOBY MOSKOVITS, YECHIEL | MOTION SEQ. NO.   003 |

96 WYTHE ACQUISITION LLC, TOBY MOSKOVITS, YECHIEL
MICHAEL LICHTENSTEIN, RENT A UNIT NY INC., ADVANCED
PLUMBING MECHANICAL & SPRINKLERS CORP., MA2 FLAGS
CONTRACTING CORP., ROCK GROUP NY CORP., CRIMINAL
COURT OF THE CITY OF NEW YORK, NEW YORK STATE
DEPARTMENT OF TAXATION AND FINANCE, ENVIRONMENTAL
CONTROL BOARD OF THE CITY OF NEW YORK, and JOHN DOE
#1 THROUGH JOHN DOE #50,

Defendants.

**DECISION + ORDER ON MOTION**

------------------------------------------------------------------X

HON. BARRY R. OSTRAGER

BSPRT 2018-FL3 Issuer, Ltd. ("BSPRT") and its alleged successor Benefit Street

Partners Operating Partnership, L.P. ("Benefit") (collectively, "Lender") have moved in this

commercial mortgage foreclosure action for an order granting (i) summary judgment against

defendants 96 Wythe Acquisition LLC ("Borrower"), Toby Moskovits and Yechiel Michael

Lichtenstein (the "Guarantors," and together with Wythe, "the Borrowers"); (ii) dismissing the

Borrowers' affirmative defenses and counterclaims; (iii) directing computation of amounts due

from the Borrowers and a determination whether the subject property should be sold as a single

parcel, or in the alternative, appointment of a Referee to determine these issues, pursuant to

RPAPL §§ 1321 and 1325; (iv) entry of default judgments, pursuant to CPLR § 3215, against

defendants Rent A Unit NY Inc., Advanced Plumbing Mechanical & Sprinklers Corp., Rock

Group NY Corp., MA2 Flags Contracting Corp., Criminal Court of the City of New York; New

York State Department of Taxation and Finance, and Environmental Control Board of the City

of New York; and (v) amendment of the caption to delete the "John Doe #1" through "John Doe

#50" defendants and substitute Benefit Street Partners Operating Partnership, L.P. for BSPRT as

FILED: NEW YORK COUNTY CLERK 08/28/2020 03:02:41 PM    INDEX NO. 653896/2019
NYSCEF DOC. NO. 278                                    RECEIVED NYSCEF: 08/28/2020

Pg 25 of 36

plaintiff. The Borrowers oppose the motion insofar as it relates to them but take no position with respect to the relief requested as to the defaulting parties or the amendment of the caption. For the reasons stated below, the motion is granted in part and denied in part.

**Background Facts**

The Lender in support of its motion submits an affidavit on personal knowledge from Tanya Mollova, a managing director of both plaintiff BSPRT and its alleged successor Benefit (NYSCEF Doc. No. 138). Also submitted are voluminous exhibits attached both to the Mollova affidavit and to the affirmation from the Lender's counsel (NYSCEF Doc. No. 138). The documents establish that on December 13, 2017, the Borrower and Benefit Street Partners Realty Operating Partnership, L.P. executed a Consolidation, Extension and Restatement of Notes Agreement (the "Consolidated Note") and a Promissory Note in the original principal amount of $68,000,000, secured by the Consolidated Mortgages that are recorded and attached as exhibits to the Complaint (NYSCEF Doc. No. 2). Those same parties on that same date also executed a Loan Agreement (Complaint Ex 44), and the Guarantors simultaneously executed a Guaranty of Recourse Obligations (Mollova Aff Ex B). The Lender contends that the Consolidated Note, the Loan Agreement, and the Guarantees were assigned to plaintiff BSPRT and later to Benefit, and Mollova claims that BSPRT was in actual possession of the original Consolidated Note, "through its custodian or counsel," when this foreclosure action was commenced (Aff ¶¶17-19).

The Loan's original Maturity Date was June 7, 2019. On June 5, the Loan's servicer sent a payoff letter to the Borrower claiming that $70,770,543.01 was due in principal, interest, and various charges (Mollova Aff Ex H). A few days later, on June 11, 2019, the Lender commenced this foreclosure action by Summons and Complaint, claiming the Maturity Date had not been extended and that the Borrower had failed to pay the amount due (NYSCEF Doc. Nos. 1 and 2). The Borrowers filed an Answer with Counterclaims on August 30, 2019, disputing the claimed

default (NYSCEF Doc. No. 32). By decision dated October 18, 2019, this Court granted the

Lender's motion for the appointment of a Receiver based on the terms of the lending documents,

and on February 21, 2020, after many conferences with counsel to resolve various disputes

relating to the Receiver's selection and powers, the Court issued a long-form order appointing

Constantino Sagonas as the Receiver (NYSCEF Doc. No. 155).[1] This motion was filed shortly

thereafter.

**Discussion**

As indicated earlier, two aspects of the motion are unopposed. The first seeks the entry of

default judgments, pursuant to CPLR § 3215, against defendants Rent A Unit NY Inc., Advanced

Plumbing Mechanical & Sprinklers Corp., Rock Group NY Corp., MA2 Flags Contracting

Corp., Criminal Court of the City of New York; New York State Department of Taxation and

Finance, and Environmental Control Board of the City of New York. The Lender has established

proper service on those parties and their failure to appear. Therefore, the Lender is entitled to a

default judgment against those parties, but as to liability only at this time for the reasons

discussed below.

As to the amendment of the caption, the deletion of any reference to John and Jane Doe is

appropriate. The Lender has also provided sufficient documentation, referenced above, to allow

for the substitution of Benefit Street Partners Operating Partnership, L.P. as the plaintiff in place

of BSPRT 2018-FL3 Issuer, Ltd.

---

[1] The Court is aware that the Lender has attempted to file a motion to compel the Receiver to
comply with the Order of Appointment, but the motion was not processed due to restrictions on
non-essential filings. As the Receiver has a duty to fulfill his obligations under the Order of
Appointment, the parties are directed to meet and confer to resolve the issues raised by the
putative motion, taking changed circumstances into account.

The balance of the motion, seeking summary judgment in favor of the Lender, the dismissal of all of the Borrowers' affirmative defenses and counterclaims, and the appointment of a Referee to compute the amount due under the mortgage, is more complex. As the Court of Appeals explained in *Alvarez v Prospect Hosp.,* 68 NY2d 320, 324 (1986), " the proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact .... Once this showing has been made, however, the burden shifts to the party opposing the motion for summary judgment to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact which require a trial of the action ..." (citations omitted).

In this case, the Lender has established a prima facie case for summary judgment in foreclosure through Mollova's affidavit based on personal knowledge and voluminous documentary evidence. However, the Borrowers in opposition have produced sufficient evidence to establish the existence of triable issues of fact precluding summary judgment. Not only does the Borrower respond to the Lender's 19-a Statement of Material Facts by disputing many of the asserted facts in detail (NYSCEF Doc. No. 171), but the Borrowers offer a detailed affidavit on personal knowledge from defendant Toby Moskovits, the manager for the defendant Borrower 96 Wythe Acquisition LLC and a Guarantor on the Loan (NYSCEF Doc. No. 162).

Moskovits vigorously disputes the Lender's claim of a default. He explains that the Loan was collateralized by the Williamsburg Hotel (the "Hotel") and had a "completion component " (see Loan Agreement, Ex A, at pp. 4, 6). Section 1.1 of the Loan Agreement defined "Completion" as the "substantial completion of the Business Plan Work" by December 31, 2018. The Loan Agreement also allowed the Lender to charge a substantial Rate Increase, amounting

4

FILED: NEW YORK COUNTY CLERK 08/29/2020 05:02:41 PM

NYSCEF DOC. NO. 278

Pg 28 of 36

INDEX NO. 653896/2019

RECEIVED NYSCEF: 08/29/2020

Main Document

to about $29,000 per month as of May 31, 2018, if the construction was not substantially complete by the deadline.

The default claimed in this case by the Lender is based in part on the Borrower's failure to pay the Rate Increase charged by the Lender due to the Borrower's failure to substantially complete the construction in a timely fashion. For example, the Lender claims the construction was not complete because the Borrower had not completed the "Rooftop Restaurant Structure" (see Mollova Aff at ¶¶ 84-87). But Moskovits in his affidavit disagrees with the Lender's reading of the requirement, contending, for example, that the Borrower was not obligated to construct a retractable roof for the restaurant enclosure.

Moskovits also details in his Affidavit the work that was complete as of July 1, 2018, and he has provided photographs purportedly corroborating that claim (NYSCEF Doc. Nos. 164 and 165). For example, the Borrower asserts that: "By the end of June 2018, the Hotel, with all amenities, was operating and open for business. The guestrooms were all complete, operational and in use.  As of June 22, 2018, the roof, pool and rooftop bar, were all in use and operational …. As of July 1, 2018, the water tower bar was in use and operational." (Moskovits Aff at ¶¶ 8 – 11). Although the Lender replies by, for example, citing other aspects of the Business Plan Work not substantially completed in a timely fashion, the Borrower has, though its evidence and disputed reading of the documents, created an issue of fact as to whether the Lender properly charged the Rate Increase and defaulted the Borrower for its nonpayment.

In the 91-paragraph Affidavit from Moskovits and the other papers submitted, the Borrower has also raised triable issues of fact as to whether the Lender properly credited the Borrower for overpayments and whether the Lender's conduct interfered with the Borrower's ability to fully comply with the Loan documents. Although the Lender in reply disputes these

5

FILED: NEW YORK COUNTY CLERK 08/29/2020 05:02:41 PM
NYSCEF DOC. NO. 278
Pg 29 of 36
INDEX NO. 653896/2019
RECEIVED NYSCEF: 08/29/2020
Main Document

claims as well, the Court agrees with the Borrower that, under the prevailing law, the Borrower's

papers sufficiently raise issues of fact precluding summary judgment in foreclosure. As the Court

of Appeals emphasized in the frequently cited case of *Sillman v Twentieth Century-Fox Film*

*Corp.,* 3 NY2d 395, 404 (1957) (citations omitted):

> To grant summary judgment it must clearly appear that no material and triable
> issue of fact is presented … This drastic remedy should not be granted where
> there is any doubt as to the existence of such issues… or where the issue is
> "arguable"; … "issue-finding, rather than issue-determination, is the key to the
> procedure…"

Although this conclusion mandates the denial of the Lender's request for

summary judgment in its favor and the appointment of a Referee to Compute the amounts

due in this foreclosure action, it does not bar completely the Lender's request for

dismissal of some of the Borrower's affirmative defenses and counterclaims. The Court

finds that the Borrower has failed to state a basis for seven of its affirmative defenses and

therefore grants the Lender's motion to dismiss the following Affirmative Defenses: the

Second related to the assignment of the Loan, as the amendment discussed above based

on an assignment was not opposed; the Fourth based on the statute of limitations, as none

of the alleged conduct occurred outside the six-year period for breach of contract; the

Fifth based on laches, as there is no evidence of undue delay by the Lender; the Eleventh

based on the statute of frauds, as all the agreements are covered by a writing; the Twelfth

based on the covenant of good faith and fair dealing, as it relates to the counterclaim

dismissed below, and the Thirteenth  based on issue and claim preclusion, as no basis has

been stated. The Court also dismisses the Sixteenth Affirmative Defense of culpable

conduct, which is really a tort concept, but the dismissal is without prejudice to related

claims alleging, for example, wrongful conduct by the Lender that interfered with the

Borrower's ability to perform or that constituted a breach of contract by the Lender

limiting its right to strictly enforce the terms of the Loan Agreement documents.
Dismissal of the remaining ten Affirmative Defenses is denied at this time. The Mollova
Affidavit attesting to the possession of the critical documents by the Lender's custodian
or counsel is too vague to establish standing related to the First Affirmative Defense; the
Third related to failure to state a claim and the Seventeenth for reservation of rights are
generic defenses that can be asserted at any time; the Sixth, Seventh, and Eighth claiming
waiver, estoppel, and unclean hands are all fact-intensive; and the Ninth, Tenth,
Fourteenth and Fifteenth related to conditions precedent, breach of contract, partial
satisfaction, and setoff all related to the Lender's contract claim and involve issues of
fact, as indicated above.

The Court also dismisses some, but not all, of the Borrower's counterclaims
asserted in the Answer (NYSCEF Doc. No. 32). In the First Counterclaim sounding in
breach of contract, the Borrower claims that the Lender wrongfully refused to accept
certain payments and give the Borrower all credits due, and that it violated the contract
by continuing to charge default interest and denying the Borrower's right to extend the
Maturity Date for the Loan. The Court declines to dismiss or sever that counterclaim, as
the Borrower has stated a cause of action under the Loan documents, and the
counterclaim is inextricably intertwined with the Lender's claims such that the claim and
counterclaim should be heard together, notwithstanding any language in the Loan
documents that arguably limits the Borrower's right to assert certain defenses and
counterclaims. However, the Court grants dismissal of the Second Counterclaim
sounding in a breach of the covenant of good faith and fair dealing, as that claim is
duplicative of the breach of contract counterclaim. Similarly, the Third Counterclaim for
a declaratory judgment is dismissed as duplicative.

Accordingly, it is hereby

ORDERED that plaintiff's motion is denied insofar as it seeks summary judgment against defendants 96 Wythe Acquisition LLC, Toby Moskovits and Yechiel Michael Lichtenstein; and it is further

ORDERED that plaintiff's motion to dismiss the Borrowers' affirmative defenses and counterclaims is granted to the extent of dismissing the Second, Fourth, Fifth, Eleventh, Twelfth, Thirteenth and Sixteenth Affirmative Defenses and the Second and Third Counterclaims, and is otherwise denied; and it is further

ORDERED that plaintiff's motion is denied insofar as it seeks an order directing computation of amounts due from the Borrowers and a determination whether the subject property should be sold as a single parcel, or in the alternative, appointment of a Referee to determine these issues, pursuant to RPAPL §§ 1321 and 1325; and it is further

ORDERED that plaintiff's motion is granted to the extent of awarding a default judgment as to liability only, pursuant to CPLR § 3215, against defendants Rent A Unit NY Inc., Advanced Plumbing Mechanical & Sprinklers Corp., Rock Group NY Corp., MA2 Flags Contracting Corp., Criminal Court of the City of New York; New York State Department of Taxation and Finance, and Environmental Control Board of the City of New York; and it is further

ORDERED that plaintiff's motion is granted insofar as it seeks the amendment of the caption to delete the "John Doe #1" through "John Doe #50" defendants and substitute Benefit Street Partners Operating Partnership, L.P. for BSPRT as plaintiff, and plaintiff shall notify the County Clerk and the General Clerk's Office, pursuant to E-filing protocols when circumstances permit, that the caption shall read as follows:

8

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
```

BENEFIT STREET PARTNERS OPERATING PARTNERSHIP, L.P.,

                                    Plaintiff,

                            - against –

96 WYTHE ACQUISITION LLC, TOBY MOSKOVITS, YECHIEL MICHAEL LICHTENSTEIN, RENT A UNIT NY INC., ADVANCED PLUMBING MECHANICAL & SPRINKLERS CORP., MA2 FLAGS CONTRACTING CORP., ROCK GROUP NY CORP., CRIMINAL COURT OF THE CITY OF NEW YORK, NEW YORK STATE DEPARTMENT OF TAXATION AND FINANCE, ENVIRONMENTAL CONTROL BOARD OF THE CITY OF NEW YORK,

                                    Defendants.

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
```

Counsel shall confer to agree upon a schedule for discovery to continue on the remaining open issues and appear for a status conference in Room 232 on June 30, 2020 at 9:30 a.m.

Dated: April 9, 2020

BARRY R. OSTRAGER, J.S.C.

| CHECK ONE: | | CASE DISPOSED | | | X | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|---|
| | | GRANTED | | DENIED | X | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | | FIDUCIARY APPOINTMENT | | REFERENCE |

9

# Supreme Court of the State of New York
# Appellate Division: First Judicial Department

Informational Statement (Pursuant to 22 NYCRR 1250.3 [a])

| Case Title: Set forth the title of the case as it appears on the summons, notice of petition or order to show cause by which the matter was or is to be commenced, or as amended. | For Court of Original Instance |
|---|---|
| BENEFIT STREET PARTNERS OPERATING PARTNERSHIP, L.P.,<br><br>- against -<br><br>96 WYTHE ACQUISITION LLC, TOBY MOSKOVITS, YECHIEL MICHAEL LICHTENSTEIN, RENT A UNIT NY INC., ADVANCED PLUMBING MECHANICAL & SPRINKLERS CORP., MA2 FLAGS CONTRACTING CORP., ROCK GROUP NY CORP., CRIMINAL COURT OF THE CITY OF NEW YORK, NEW YORK STATE DEPARTMENT OF TAXATION AND | Date Notice of Appeal Filed<br><br>For Appellate Division |

| Case Type | | Filing Type | |
|---|---|---|---|
| ■ Civil Action | ☐ CPLR article 78 Proceeding | ■ Appeal | ☐ Transferred Proceeding |
| ☐ CPLR article 75 Arbitration | ☐ Special Proceeding Other | ☐ Original Proceedings | ☐ CPLR article 78 |
| | ☐ Habeas Corpus Proceeding | ☐ CPLR article 78 | ☐ Executive Law § 298 |
| | | ☐ Eminent Domain | ☐ CPLR 5704 Review |
| | | ☐ Labor Law § 220 or § 220-b | |
| | | ☐ Public Officers Law § 36 | |
| | | ☐ Real Property Tax Law § 1278 | |

**Nature of Suit:** Check up to three of the following categories which best reflect the nature of the case.

| | | | |
|---|---|---|---|
| ☐ Administrative Review | ☐ Business Relationships | ■ Commercial | ☐ Contracts |
| ☐ Declaratory Judgment | ☐ Domestic Relations | ☐ Election Law | ☐ Estate Matters |
| ☐ Family Court | ■ Mortgage Foreclosure | ☐ Miscellaneous | ☐ Prisoner Discipline & Parole |
| ☐ Real Property (other than foreclosure) | ☐ Statutory | ☐ Taxation | ☐ Torts |



**CP COUNSEL PRESS**

800-4-APPEAL
460 WEST 34TH STREET, 4TH FLOOR, NEW YORK, NEW YORK, 10001
WWW.COUNSELPRESS.COM

| Appeal | |
|---|---|
| **Paper Appealed From** (Check one only): | If an appeal has been taken from more than one order or judgment by the filing of this notice of appeal, please indicate the below information for each such order or judgment appealed from on a separate sheet of paper. |

| | | | |
|---|---|---|---|
| ☐ Amended Decree | ☐ Determination | ■ Order | ☐ Resettled Order |
| ☐ Amended Judgement | ☐ Finding | ☐ Order & Judgment | ☐ Ruling |
| ☐ Amended Order | ☐ Interlocutory Decree | ☐ Partial Decree | ☐ Other (specify): |
| ☐ Decision | ☐ Interlocutory Judgment | ☐ Resettled Decree | |
| ☐ Decree | ☐ Judgment | ☐ Resettled Judgment | |

| | |
|---|---|
| **Court:** Supreme Court | **County:** New York |
| **Dated:** April 9, 2020 | **Entered:** April 9, 2020 |
| **Judge (name in full):** Barry R. Ostrager | **Index No.:** 653396/2019 |
| **Stage:** ■ Interlocutory ☐ Final ☐ Post-Final | **Trial:** ☐ Yes ☒ No  **If Yes:** ☐ Jury ☐ Non-Jury |

| Prior Unperfected Appeal and Related Action or Proceeding Information |
|---|

Are any appeals arising in the same action or proceeding currently pending in the court? ☐ Yes ☑ No
If Yes, please set forth the Appellate Division Case Number assigned to each such appeal.

Where appropriate, indicate whether there is any related action or proceeding now in any court of this or any other jurisdiction, and if so, the status of the case:

| Original Proceeding |
|---|

| | |
|---|---|
| **Commenced by:** ☐ Order to Show Cause ☐ Notice of Petition ☐ Writ of Habeas Corpus | **Date Filed:** |
| Statute authorizing commencement of proceeding in the Appellate Division: | |

| Proceeding Transferred Pursuant to CPLR 7804(g) |
|---|

| | |
|---|---|
| **Court:** | **County:** |
| **Judge (name in full):** | **Order of Transfer Date:** |

| CPLR 5704 Review of Ex Parte Order: |
|---|

| | |
|---|---|
| **Court:** | **County:** |
| **Judge (name in full):** | **Dated:** |

| Description of Appeal, Proceeding or Application and Statement of Issues |
|---|

**Description:** If an appeal, briefly describe the paper appealed from. If the appeal is from an order, specify the relief requested and whether the motion was granted or denied. If an original proceeding commenced in this court or transferred pursuant to CPLR 7804(g), briefly describe the object of proceeding. If an application under CPLR 5704, briefly describe the nature of the ex parte order to be reviewed.

This is an appeal of an April 9, 2020 decision and order (the "Order") of the Hon. Barry R. Ostrager, which granted in part and denied in part Plaintiff's motion for summary judgment.



Issues: Specify the issue(s) proposed to be raised on the appeal, proceeding, or application for CPLR 5704 review, the grounds for reversal or modification to be advanced and the specific relief sought on appeal.

The issues to be raised on appeal are whether the Motion Court court erred in (1) partially denying Plaintiff's motion for summary judgment; and (2) finding that there were triable issues of fact partially precluding summary judgment. The specific relief sought on appeal is the reversal of the Order to the extent it partially denied summary judgment, such that Plaintiff's motion for summary judgment be granted in its entirety.

## Party Information

Instructions: Fill in the name of each party to the action or proceeding, one name per line. If this form is to be filed for an appeal, indicate the status of the party in the court of original instance and his, her, or its status in this court, if any. If this form is to be filed for a proceeding commenced in this court, fill in only the party's name and his, her, or its status in this court. Examples of party's original status include: plaintiff, defendant, petitioner, respondent, claimant, defendant third-party plaintiff, third-party defendant, and intervenor. Examples of a party's Appellate Division status include: appellant, respondent, appellant-respondent, respondent-appellant, petitioner, and intervenor.

| No. | Party Name | Original Status | Appellate Division Status |
|---|---|---|---|
| 1 | Benefit Street Partners Operating Partnership, L.I | Plaintiff | Appellant |
| 2 | 96 Wythe Acquisition LLC | Defendant | Respondent |
| 3 | Toby Moskovits | Defendant | Respondent |
| 4 | Yechiel Michael Lichtenstein | Defendant | Respondent |
| 5 | Rent A Unit NY Inc. | Defendant | None |
| 6 | Advanced Plumbing Mechanical & Sprinklers Cor | Defendant | None |
| 7 | MA2 Flags Contracting Corp. | Defendant | None |
| 8 | Rock Group NY Corp. | Defendant | None |
| 9 | Criminal Court Of The City Of New York | Defendant | None |
| 10 | New York State Department Of Taxation And.. | Defendant | None |
| 11 | Environmental Control Board Of The City Of New | Defendant | None |
| 12 | | | |
| 13 | | | |
| 14 | | | |
| 15 | | | |
| 16 | | | |
| 17 | | | |
| 18 | | | |
| 19 | | | |
| 20 | | | |



CP  COUNSEL PRESS

800-4-APPEAL
460 WEST 34TH STREET, 4TH FLOOR, NEW YORK, NEW YORK, 10001
WWW.COUNSELPRESS.COM

| Attorney Information |
|---|

Instructions: Fill in the names of the attorneys or firms for the respective parties. If this form is to be filed with the notice of petition or order to show cause by which a special proceeding is to be commenced in the Appellate Division, only the name of the attorney for the petitioner need be provided. In the event that a litigant represents herself or himself, the box marked "Pro Se" must be checked and the appropriate information for that litigant must be supplied in the spaces provided.

Attorney/Firm Name: Ethan A. Kobre, Esq. - Schwartz Sladkus Reich Greenberg Atlas LLP

Address: 444 Madison Avenue

| City: New York | State: New York | Zip: 10022 | Telephone No: 212.743.7000 |
|---|---|---|---|

E-mail Address: ekobre@ssrga.com

| Attorney Type: | ■ Retained | ☐ Assigned | ☐ Government | ☐ Pro Se | ☐ Pro Hac Vice |
|---|---|---|---|---|---|

Party or Parties Represented (set forth party number(s) from table above:    1

Attorney/Firm Name: Jason A. Nagi, Esq. - Polsinelli PC

Address: 600 Third Avenue, 42nd Floor

| City: New York | State: New York | Zip: 10016 | Telephone No: 212.644.2092 |
|---|---|---|---|

E-mail Address: jnagi@polsinell.com

| Attorney Type: | ■ Retained | ☐ Assigned | ☐ Government | ☐ Pro Se | ☐ Pro Hac Vice |
|---|---|---|---|---|---|

Party or Parties Represented (set forth party number(s) from table above:    2-4

Attorney/Firm Name:

Address:

| City: | State: | Zip: | Telephone No: |
|---|---|---|---|

E-mail Address:

| Attorney Type: | ☐ Retained | ☐ Assigned | ☐ Government | ☐ Pro Se | ☐ Pro Hac Vice |
|---|---|---|---|---|---|

Party or Parties Represented (set forth party number(s) from table above:

Attorney/Firm Name:

Address:

| City: | State: | Zip: | Telephone No: |
|---|---|---|---|

E-mail Address:

| Attorney Type: | ☐ Retained | ☐ Assigned | ☐ Government | ☐ Pro Se | ☐ Pro Hac Vice |
|---|---|---|---|---|---|

Party or Parties Represented (set forth party number(s) from table above:

Attorney/Firm Name:

Address:

| City: | State: | Zip: | Telephone No: |
|---|---|---|---|

E-mail Address:

| Attorney Type: | ☐ Retained | ☐ Assigned | ☐ Government | ☐ Pro Se | ☐ Pro Hac Vice |
|---|---|---|---|---|---|

Party or Parties Represented (set forth party number(s) from table above:

Attorney/Firm Name:

Address:

| City: | State: | Zip: | Telephone No: |
|---|---|---|---|

E-mail Address:

| Attorney Type: | ☐ Retained | ☐ Assigned | ☐ Government | ☐ Pro Se | ☐ Pro Hac Vice |
|---|---|---|---|---|---|

Party or Parties Represented (set forth party number(s) from table above:



CP COUNSEL PRESS

800-4-APPEAL
460 WEST 34TH STREET, 4TH FLOOR, NEW YORK, NEW YORK, 10001
WWW.COUNSELPRESS.COM